UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

JOHN DOE                                      )
                                              )
                 Plaintiff,                   )
                                              )
v.                                            )
                                              )
VIRGINIA POLYTECHNIC INSTITUTE                )
AND STATE UNIVERSITY,                         )
                                              )
TIMOTHY SANDS, employee of Virginia           )    Civil Action No. _7:20CV210_
Polytechnic Institute and State University,   )
sued in his official and individual capacity  )
                                              )
FRANK SHUSHOK, JR., employee of               )
Virginia Polytechnic Institute and State      )
University, sued in his official and          )
individual capacity,                          )
                                              )
                 Defendants.                  )

## PLAINTIFF'S COMPLAINT

### Introduction

1.      John Doe[1] files this Complaint against Defendants Virginia Polytechnic Institute

and State University, Timothy Sands, and Frank Shushok, Jr., for violations of his rights under

the procedural and substantive due process requirements of the Fourteenth Amendment to the

United States Constitution, and a state law claim for breach of contract.

2.      On October 18, 2019, Mr. Doe, a junior student at Virginia Tech, and other junior

and senior leaders of the Bravo Company, a unit of the Virginia Tech Corps of Cadets, led a

routine, team-building event for sophomore members at Caldwell Fields campground. They

---

[1] "John Doe" is not Plaintiff's real name. He is proceeding under a pseudonym for his privacy. Defendant will not be prejudiced by permitting him to proceed anonymously because it has knowledge of the actual identity of John Doe.

performed group exercise. They hiked a mountain. They had a bonfire, spoke about Corps tradition, and awarded small pins for participating. The pins were placed on a shirt and tapped. The weather was mild. No one was hurt. All this was optional. It had been a Corps tradition for years. Afterwards, they shared a meal at Cook-Out Restaurant.

3.       Weeks later, an anonymous student complained to Virginia Tech that the upperclassmen had engaged in hazing at the event. He alleged the event was conducted in "secret"; that students were told to record different destinations when they signed out of their residence halls to attend; and, the upperclassmen warned them "not to tell anyone." The clear implication of his complaint was that if the team-building event had to be done in "secret," then the upperclassmen must have known it was wrong to proceed, and did so anyways.

4.       Virginia Tech launched an investigation. Officials interviewed sophomores who participated. Not a single one corroborated the original complaint that it was done in secret.

5.       Virginia Tech concluded its investigation and accused Mr. Doe and his fellow upperclassmen of hazing.

6.       Virginia Tech scheduled a joint student conduct hearing to determine the truth of the allegations.

7.       One week before the joint student conduct hearing, Virginia Tech gave Mr. Doe and the other accused students a packet of documents purportedly containing all the information that the investigators had gathered, e.g. witness statements, etc.

8.       Unbeknownst to the accused students, Virginia Tech officials had removed from the packet any statements from the original accuser, in an effort to hide his identity.

9.     In fact, Virginia Tech created a fake email chain among school officials to make it seem like the complaint originated with a senior administrator on November 4, 2019, when in reality, the student had made the original complaint on October 31, 2019.

10.     Virginia Tech intentionally mislead Mr. Doe and the other accused students about how, when, and from whom, the original complaint originated.

11.     Virginia Tech withheld any investigator notes, email, or other documents, from the accused students, referencing the original complaint.

12.     On December 9, 2019, Virginia Tech held its joint hearing for Mr. Doe.

13.     On December 12, 2019, Virginia Tech found Mr. Doe and the other accused students guilty of hazing. Hearing officers specifically referenced in their written decision the allegation that the event was done covertly and in "secret" – even though not a single student, except the anonymous accuser, made that accusation. In other words, hearing officers relied on allegations from an unknown, anonymous person, to reach their decision, without allowing the accused students any opportunity to confront and question the veracity of that allegation.

14.     Mr. Doe was suspended for a semester.

15.     Mr. Doe had a Navy ROTC scholarship and had signed a contract with the Navy to commission as an officer upon graduation.

16.     Due to his suspension, he is now subject to disenrollment with the ROTC, will forfeit his Navy commission, and be forced to repay his scholarship upon graduation.

17.     At the time, Virginia Tech did not realize its suspension would cause Mr. Doe to lose his commission and incur a scholarship debt.

18.     However, multiple efforts to resolve Mr. Doe's case with Virginia Tech in an effort to save his future were flatly rebuffed. Mr. Doe has no choice but to file this lawsuit seeking injunctive relief and compensatory damages.

19.     Mr. Doe was denied his right to due process when Virginia Tech flagrantly withheld the identity, source, and nature of the original complaint that was used to adjudicate his guilt. Even in the rudiments of a student conduct hearing, Virginia Tech fundamentally deprived Mr. Doe of a fair process to contest the allegations. School officials created fake emails, withheld documents, and misled accused students about the basic facts of their case.

20.     Mr. Doe now has permanent mark on his record. Without help from this Court, he will lose his life's dream to serve his country as a Naval officer. He will be forced to repay his scholarship after graduation. He asks this Court to grant declaratory and injunctive relief setting aside the conduct hearing result as violative of the U.S. Constitution.

## Parties

21.     Plaintiff John Doe ("Mr. Doe") is, and at all times relevant to this Complaint has been, a resident of Virginia.

22.     Defendant Virginia Polytechnic Institute and State University ("Virginia Tech") is a public university incorporated, and with its principal place of business located, in Virginia.

23.     Defendant Timothy Sands is or was at pertinent times the President of Virginia Tech and resides in Virginia.

24.     Defendant Frank Shushok, Jr., is or was at pertinent times a Vice President for Virginia Tech and resides in Virginia.

**Jurisdiction and Venue**

25.     This action arises under the Fourteenth Amendment to the United States

Constitution and 42 U.S.C. § 1983. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§

2201, 2202, 1331 and 1343.

26.     Venue is proper pursuant to 28 U.S.C. § 1391. Virginia Tech is a public university

created under the Virginia Code, incorporated and with its principal place of business in this

district. The errors and omissions giving rise to Plaintiff's claims took place in this district.

**Facts**

27.     Since its founding, Virginia Tech has offered military training to its students

through the Virginia Tech Corps of Cadets ("Corps").

28.     In 2019, Mr. Doe was a junior at Virginia Tech and member of the Corps.

29.     Mr. Doe was a junior leader in Bravo Company, a Corps unit.

30.     On October 18, 2019, the Bravo Company held a voluntary integration event for

sophomore members of the company.

31.     The purpose of the team-building event, which had been held for years, was to

foster camaraderie among the members.

32.     The team-building event had been approved by Mr. Doe's superior, Cadet

Commander Nelson Demarest.

33.     The event was entirely voluntary.

34.     Anyone who was a member of Bravo Company before the event would continue

to be so in good standing regardless of whether they participated in the event or not.

35.     A group of about 21 juniors and seniors led the event, and about 20 sophomores voluntarily participated.

36.     Participants met at Caldwell Fields to perform a variety of exercises for physical training. Then, the group undertook a hike, stopping at various points.

37.     Mr. Doe was not present or involved in any planning or preparation.

38.     Mr. Doe did not draft or assist in drafting the operations order that was presented to approve the event.

39.     Mr. Doe was simply informed of the date, time, and location, of the event, and he showed up.

40.     At the conclusion of the hike, the group went back down and had a bonfire where one of the platoon leaders gave a speech about Bravo Company.

41.     A ceremony was held where the members were given a pin to recognize their participation.

42.     Upon information and belief, each sophomore brought their own pin.

43.     The pin involved is a small company pin.

44.     It is placed on a person's shirt and tapped. Participation in this ceremony is entirely voluntary.

45.     Each Bravo pin that was used was sterilized with rubbing alcohol prior to being used.

46.     Participation in the pin ceremony was entirely voluntary; no one was pinned who did not want to be.

47.     Absolutely no drugs or alcohol were involved.

48.     A sophomore asked Mr. Doe to pin him, which he did.

6

49.     As far as Mr. Doe was concerned, no one was injured during the event.

50.     The integration event was no different than it had been for many years.

51.     During Mr. Doe's time at Virginia Tech, Corps cadets routinely performed grueling events involving physical training throughout the year.

52.     He also participated in Platoon Tactical Challenge, in which cadets conduct physical fitness, obstacles, and other timed events.

53.     Mr. Doe was also pinned during his own sophomore integration event.

54.     Virginia Tech staff were aware of the events and allowed them to go forward.

55.     The Corps also displayed a photo in its hall of a prior year integration event where team members had been pinned according to Corps tradition.

56.     This photo remained on display on campus when the October 18, 2019, event took place.

57.     Notwithstanding Corps history and tradition, this year, an unidentified student contacted Virginia Tech to allege the event constituted hazing, and Bravo Company's juniors and seniors acted covertly to avoid oversight.

58.     As a result of the anonymous complaint, Virginia Tech launched an investigation into whether Mr. Doe, and others, violated its hazing policy.

### Investigation

59.     The investigation should have proceeded in accordance with Virginia Tech policy, but it did not.

60.     Mr. Doe and Virginia Tech had agreed to be bound by the *Hokie Handbook*, 2019-2020 ("Handbook") and the *Virginia Tech Corps of Cadets Regulations*, July 2019 ("Corps Manual") to adjudicate matters of alleged misconduct and violations of university policy.

61.     The Handbook incorporated by reference the Corps Manual and set forth the

procedure for alleged violations by cadets of university policies:

*Alleged conduct violations by cadets of university policies and/or Corps of Cadets regulations are adjudicated either by the Cadet Executive Committee or a Deputy Commandant hearing.*

*...Cadet regulations stipulate the detailed process of adjudicating alleged cadet misconduct.*

62.     The applicable "cadet regulations" referenced in the Handbook are set forth under

a section entitled "rights of the accused" in the Corps Manual, including:

*2. Be informed of the identity of the accuser(s) or the circumstances leading to the*

*hearing*

*...*

*8. Cross-examine witnesses who are provided for in accordance with this regulation*

*...*

*10. Have evidence, including documents or physical evidence, within the control of Corps*

*or University authorities produced in accordance with this regulation*

63.     Therefore, Mr. Doe was guaranteed under the Handbook and Corps Manual, to be

afforded the following process during the investigation of the October 18, 2019, event: to be

informed of the identity of his accuser or circumstances leading to the hearing; to cross-examine

witnesses against him; and, to be given the documents and other evidence within the control of

University authorities.

64.     As set forth below, Virginia Tech failed to uphold Mr. Doe's rights as set forth in

its own policies.

65.     Virginia Tech failed to inform Mr. Doe of the identity of his accuser.

66.     Virginia Tech failed to inform Mr. Doe of the circumstances leading to the hearing.

67.     Virginia Tech failed to allow him an opportunity to cross-examine his accuser.

68.     Virginia Tech failed to give Mr. Doe all documents and evidence within its control prior to the hearing.

69.     On October 31, 2019, Ennis McCrery, Director of Student Conduct at Virginia Tech, spoke with an anonymous student about the team-building event.

70.     Ms. McCrery took notes during the meeting.

71.     On November 1, 2019, Ms. McCrery emailed her notes to Dr. Shushok, Vice President of Student Affairs at Virginia Tech, and Frances Keene, Assistant Vice President of Student Affairs at Virginia Tech, following her meeting with the student.

72.     Ms. McCrery told Dr. Shushok and Dr. Keene that the student shared "A LOT" and her notes were "pretty generic."

73.     Ms. McCrery told Dr. Shushok and Dr. Keene that she wanted to talk through how to approach Randall Fullhart, Commandant of the Corps, about the situation.

74.     On November 3, 2019, Dr. Shushok emailed Ms. McCrery and Dr. Keene and suggested that they "paired [Ms. McCrery's] narrative down a lot and only shared" a sanitized version of the complaint that Dr. Shushok had typed up.

75.     Dr. Shushok suggested that Dr. Keene then "write an e-mail to me indicating receipt of the complaint [that Dr. Shushok typed]" that he could then send to Mr. Fullhart so that it "doesn't expose that it is coming from a particular student."

76.     When Dr. Shushok suggested to Ms. McCrery they keep the student's identity anonymous, and that Dr. Keene fabricate an email to obfuscate the source and full scope of the

9

student's accusations, he knew, or should have known, that the Corps Manual stated that students like Mr. Doe had a right to know and cross-examine their accuser in misconduct matters.

77.     Dr. Shushok knew, or should have known, that he was intentionally disregarding Mr. Doe's rights as a student accused of misconduct, when he went to great lengths to re-package the original student's complaint and create a fake email chain to hide its source.

78.     On November 4, 2019, Dr. Keene sent the email to Dr. Shushok with an exact copy of the complaint that Dr. Shushok had drafted, omitting any reference to the original accuser, the full details of his accusations, or even that a student had made the complaint.

79.     Dr. Shushok forwarded the email to Mr. Fullhart to initiate an investigation into whether the October 18, 2019, event constituted hazing.

80.     Virginia Tech assigned Craig Alia, Deputy Commandant of the Corps, and Ms. McCrery, to investigate the hazing allegation.

81.     Mr. Alia had a conflict of interest because he was also a witness to the October 18, 2019, event.

82.     Mr. Alia was a member of Corps staff.

83.     One of Mr. Alia's jobs was to sign-off on operations orders that students drafted in advance of their team-building events.

84.     In the Bravo Company case, Mr. Alia would later claim that he never saw or approved the operations order for the October 18, 2019, event, thereby providing further evidence that it was done in secret or unsanctioned.

85.     In essence, Mr. Alia was a witness. He would offer testimony that the event had not been approved by him.

86.     Notwithstanding Mr. Alia's interest in the case as a witness, Virginia Tech allowed him to serve a dual role as the investigator into what transpired.

87.     On November 4, 2019, Mr. Alia ordered various members of Bravo Company to report for a mandatory meeting.

88.     Sophomores were taken to a separate room, where they were instructed to make statements about what happened, and if they refused, they would face punishment.

89.     Each sophomore present wrote a written statement.

90.     Not a single sophomore said Mr. Doe engaged in an act of hazing.

91.     Sophomores wrote:

   a.   "We began doing some light PT"

   b.   "We had the option to get blood pinned"

   c.   "After that we went to Cook-Out"

   d.   "They stated [pinning] was optional"

   e.   "Juniors didn't antagonize" or make anyone do it

   f.   "There were cars and flashlights to see"

   g.   "It was made clear…if we did not want to participate, we did not have to"

   h.   "I personally enjoyed the event"

   i.   "I do not find it appropriate to describe the event as hazing"

   j.   "It was made VERY CLEAR that the entire event was optional"

92.     Not a single student corroborated the anonymous complaint suggesting that the event was conducted in "secret" or "unsanctioned."

93.     On November 6, 2019, Ms. McCrery emailed Dr. Shushok and Dr. Keene to say she and Mr. Alia would have the final investigation report completed within a week.

94.     Dr. Shushok asked, "How's our complainant?"

95.     Ms. McCrery said that he was "pretty stressed" but was "okay." She said that she had spoken with him that night, and "of course, everyone is wondering who told." She said he was "pretty special" and "what a difference this situation will make for future members of the Corps." She said she wished they could give the student a "Courageous Leadership" award.

96.     On November 18, 2019, Ms. McCrery and Mr. Alia finished their report.

97.     On November 25, 2019, Ms. McCrery sent Mr. Doe a letter advising that he had been charged with violations of university policy involving hazing.

98.     On December 2, 2019, Ms. McCrery met with Mr. Doe, and the other accused students, for a prehearing meeting.

99.     Ms. McCrery gave the accused students a packet of documents containing the final report, witness statements, and other documents gathered in the investigation.

100.    In the packet, Ms. McCrery withheld a) any meeting notes with the accuser on October 31, 2019, b) any meeting notes with the accuser on November 6, 2019, and c) any email, documents, or other items of evidence that the accuser submitted to initiate the investigation.

101.    The final report was dated November 18, 2019.

102.    The final report was not given to students until December 2, 2019.

103.    A joint student conduct hearing was scheduled for December 9, 2019.

104.    The students had less than a week to prepare a defense.

105.    The final investigative report stated:

On November 4, 2019, Interim Vice President of Student Affairs Dr. Frank Shushok received a report from Interim Vice of Student Affairs Dr. Frances Keene alleging that students in Bravo Company held a secret, unsanctioned 'sophomore integration event' on or about October 18, 2019. Specifically, the report states the following:

*Around 6:00 p.m., Bravo Company departed by car to the event and were warned not to tell anyone. Sophomores were instructed not to write "integration" when they signed out and to record different destinations so as not to draw attention to the fact that a large group was leaving together.*

*As part of the "integration" (lasting around 4 hours) cadets went to Caldwell Fields where they:*
>    *1) were required to do pushups and sit ups in the parking lot*
>    *2) led in "rat line" to a creek to take "Bravo Baths" in the creek*
>    *3) Alternated bear crawls, crab walks, and other exercises back to the parking lot*
>    *4) Climbed a mountain and were instructed to bear crawl, crab walk, with pushups in between*
>    *5) Given weighted vests and instructed to run up and down for several miles*
>    *6) "Blood pinned" by upperclassmen (i.e., upperclassmen pounded a company pin into a sophomore's chest)*

Dr. Shushok referred this report to Major General Randy Fullhart, Commandant of the Corps, and Ennis McCrery, Director of Student Conduct, for a joint investigation.

106.    As written, the final report gave the impression that the "italicized text" directly quoted the original accuser. It did not. Dr. Shushok drafted that section on November 3, 2019, based second-hand on Ms. McCrery's notes from her meeting on October 31, 2019. He sent it to Dr. Keene, to send back to him on November 4, 2019, to "start" the investigation.

107.    The final report misled the accused students and the hearing officers who presided over the case on December 9, 2019 into believing that the complainant had been directly quoted in the italics and reported the allegation on November 4, 2019; this information was false.

108.    Virginia Tech knowingly misled its own students and hearing officers about the true source, substance, and nature of the hazing complaint, in the final report to the parties.

## Student Conduct Hearing

109.    On December 9, 2019, Mr. Doe and the other accused students appeared for a joint hearing to determine whether they had violated the hazing policy.

110.    On the eve of the hearing, Mr. Alia contacted another accused student by email and advised him how to plead the next day. He said to accept responsibility, stay focused on the "big picture," and "we can work around anything else."

111.    Mr. Alia did not refer this other student to an independent advisor for advice on how to plead the next day at the hearing.

112.    The hearing officers consisted of two Virginia Tech staff: one, from the Corps, the other, from the Office of Student Conduct. Neither had participated in the investigation.

113.    The hearing officers advised that the students had the right to plead responsible, not responsible, or no plea, to the charges.

114.    The accused students entered their pleas.

115.    After entering pleas, the hearing officers heard opening statements from the accused students.

116.    Next, the hearing officers reviewed the contents of the investigator's report and the various written statements from the sophomores who were present at the event.

117.    The hearing officers then heard testimony from the accused students, including Mr. Doe, who stated that he was the junior member of Bravo Company; the event had been a Corps tradition; no one was injured; and, the event was voluntary.

118.    The hearing officers did not hear testimony from the original accuser because as noted above, he was never identified.

119.    During a break, Mr. Alia told one of the cadets to change his plea to responsible mid-way through the hearing.

120.    Following the hearing, Mr. Doe and others were found responsible for violating the Virginia Tech's hazing policy.

14

121.    The evidence did not support a finding of hazing.

122.    None of the sophomores who were interviewed suggested that the event was hazing; no one was hurt, injured, or endangered; the event itself was a Corps tradition; and, there was no evidence, other than from the anonymous accuser, that the event was held in secret to evade detection from university authorities.

123.    As punishment for the finding of responsibility, Virginia Tech suspended Mr. Doe for one semester.

124.    Students were advised that they had a right to appeal on the following grounds (1) denial of procedural guarantees; (2) significant and relevant new evidence that was not available at the time of the hearing; and (3) sanctions/findings that are unduly harsh or arbitrary.

125.    Mr. Doe appealed the hearing outcome.

126.    Dr. Keene presided over the appeals.

127.    Dr. Keene denied Mr. Doe's appeal.

128.    As a result of the Defendants' actions, Mr. Doe has suffered damages, including disruption of his educational progress; embarrassment; and, loss of good name.

129.    Furthermore, Mr. Doe is subject to disenrollment from the Navy ROTC, thereby forfeiting his commission and resulting in a repayment of his ROTC scholarship. Navy regulations dictate that if a student is suspended from school, they will be processed for disenrollment, even after they reenroll in the school. Absent injunctive relief, Mr. Doe will lose his commission and incur the cost of repaying his scholarship. He will be required to repay nearly $50,000 in ROTC scholarship funds, Virginia Tech expenses, and other costs.

**COUNT I – VIOLATION OF THE DUE PROCESS CLAUSE**
**OF THE FOURTEENTH AMENDMENT PURSUANT TO**
**42 U.S.C. § 1983 – PROCEDURAL DUE PROCESS**
**(AGAINST ALL DEFENDANTS)**

130.    Mr. Doe realleges the foregoing paragraphs.

131.    At the time Mr. Doe attended Virginia Tech, the university had in place a system of expelling, suspending, or dismissing students, only after a finding of cause, in accordance with its policies and procedures in the Handbook.

132.    Virginia Tech, through the specific policies and procedures set forth in its Handbook, created a reasonable expectation that Mr. Doe, so long as he abided by the code of conduct established therein, and otherwise paid his tuition and achieved satisfactory grades, would not be removed from the university of deprived of his right to pursue his degree, but for application of the system that Virginia Tech had enacted in student conduct matters.

133.    Therefore, Mr. Doe had a protected property interest in his education at Virginia Tech because, once he accepted his offer of admission and paid his tuition, and so long as he abided by the Handbook, he was entitled to enrollment at Virginia Tech.

134.    Mr. Doe suffered a deprivation of a property interest when he was  suspended for one semester from Virginia Tech, which as a result, will inhibit his ability keep his enlistment contract with the U.S. Navy and ROTC scholarship.

135.    Mr. Doe also has a constitutionally protected liberty interest in his good name, reputation and integrity.

136.    The due process protections of the Fourteenth Amendment to the United States Constitution apply to the disciplinary process used by Virginia Tech against Mr. Doe.

137.    Mr. Doe was entitled to process commensurate with the seriousness of the charge of hazing and the potential discipline he faced. The allegation was serious and resulted in harsh

16

sanctions, as well as the prospect of a lifelong stigma that will foreclose future educational and employment opportunities.

138.    Mr. Doe was entitled to a fundamentally fair procedure to determine whether he was responsible for the alleged misconduct.

139.    Defendants failed to provide adequate procedural due process when they

1) failed to identify Mr. Doe's accuser,

2) failed to provide him with an opportunity to confront and question his accuser,

3) failed to provide him before the formal hearing with all the evidence in its possession, including the original complaint, meeting notes, and other items;

4) fabricated an email chain to obfuscate the nature, substance, and identity of his accuser; and,

5) allowed Mr. Alia to serve multiple roles as a witness, an investigator, and an advisor, in one instance contacting a student on the eve of the hearing to plead guilty.

140.    As a result of the due process violations, Mr. Doe was wrongly disciplined and suffers ongoing harm to his good name and educational progress. He has incurred attorneys' fees, lost his Virginia Tech Emerging Leaders scholarship, and is at jeopardy of losing his Navy commission and incurring a repayment debt of his ROTC scholarship.

**COUNT II – VIOLATION OF THE DUE PROCESS CLAUSE**
**OF THE FOURTEENTH AMENDMENT PURSUANT TO**
**42 U.S.C. § 1983 – SUBSTANTIVE DUE PROCESS**
**(AGAINST ALL DEFENDANTS)**

141.    Mr. Doe realleges the foregoing paragraphs.

142.    Irrespective of the fairness of the procedures utilized, the Fourteenth Amendment to the United States Constitution also protects Mr. Doe's property interests under substantive due process from government intrusion which is arbitrary and capricious.

17

143.     Virginia Tech has a long history of permitting students in the Corps to conduct integration events that include physical training exercises and optional pinning. Indeed, there was a picture hanging in the Corps hall documenting such an event the previous year.

144.     Virginia Tech received notice in November 2019 from counsel for an accused student of hazing in other companies. But, Virginia Tech declined to investigate or bring sanctions against anyone else, other than Mr. Williams and the members of Bravo Company.

145.     The failure to investigate other allegations demonstrates that the investigating officers and Virginia Tech were not interested in holding accountable everyone who engaged in such an act, but rather in casting blame on a few cadets to answer a specific complaint.

146.     Most importantly, no one, other than the anonymous, unnamed, unidentified complainant, seems to suggest Mr. Doe and others committed hazing. The overwhelming weight of evidence suggests that the event was safe, voluntary, and optional.

147.     Accordingly, it was arbitrary and capricious for Defendants to punish Mr. Doe for hazing, when the facts do not support it, the same conduct had been allowed in the past, and other conduct has gone uninvestigated.

148.     As a result of the substantive due process violations, Mr. Doe was wrongly disciplined and suffers ongoing harm to his good name and educational progress.

## COUNT III – BREACH OF CONTRACT
## (AGAINST VIRGINIA TECH)

149.     Mr. Doe realleges the foregoing paragraphs.

150.     Mr. Doe provided Virginia Tech with sums of money for his education, and in return, Virginia Tech contracted to provide Mr. Doe with access to its degree program.

151.     Mr. Doe's enrollment in, and attendance of, classes at Virginia Tech created an expectation that he would be allowed to continue his course of study until he earned his degree

from Virginia Tech, provided that he maintained satisfactory grades and complied with Virginia Tech's rules and policies.

152.   Accordingly, as a condition of Mr. Doe's enrollment at Virginia Tech, an express contractual relationship existed between Virginia Tech and Mr. Doe, under which each party owed the other certain duties in the Handbook and the Corps Manual.

153.   Virginia Tech had a duty not to suspend Mr. Doe for violations of university conduct policy without affording him the "rights of the accused" set forth in the Corps Manual:

> *2. Be informed of the identity of the accuser(s) or the circumstances leading to the hearing*
>
> *...*
>
> *8. Cross-examine witnesses who are provided for in accordance with this regulation*
>
> *...*
>
> *10. Have evidence, including documents or physical evidence, within the control of Corps or University authorities produced in accordance with this regulation*

154.   Virginia Tech breached its duty under the Corps Manual when it failed to inform him of the identity of his accuser; allow him to cross-examine his accuser; or, provide all the evidence in its possession, prior to suspending him for his role in the October 18, 2019, event.

155.   As a result of Virginia Tech's breach of contract, Mr. Doe suffered damages, including disruption of his educational progress; embarrassment; and, loss of good name.

## **DEMAND FOR JUDGMENT**

WHEREFORE, Mr. Doe requests the Court award the following relief, and enter a judgment against the Defendants, jointly and severally:

a.      A declaratory judgment that the Defendants violated Mr. Doe's rights to due process;

b.      An preliminary injunction requiring the Defendants to lift Mr. Doe's suspension; remove the misconduct finding from his record; and, allow Mr. Doe to register for classes for the next available semester;

c.      A permanent injunction requiring Defendants to: expunge Mr. Doe's records at Virginia Tech of any indication of a finding that he committed an act of hazing or was the subject of discipline;

c.      A permanent injunction enjoining Defendants from: (i) continuing to enforce any sanction against Mr. Doe for alleged hazing; (ii) making any notation in Mr. Doe's educational or disciplinary records related to the incidents described in this Complaint; and, (iii) making any disclosure to a third party that any adverse disciplinary action was taken against Mr. Doe arising out of the incidents described in this Complaint;

d.      An award of Mr. Doe's attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and any other appropriate authority;

e.      An award of compensatory damages in an amount to be determined at trial for disruption of Mr. Doe's educational progress, embarrassment, loss of his Emerging Leaders Scholarship, loss of his Navy commission and repayment of his ROTC scholarship, and loss of good name; and

f.      An award of punitive damages in an amount to be determined at trial; and,

g.      Any other further relief as the Court deems just and appropriate.

April 13, 2020                     Respectfully submitted,

JOHN DOE

By _____
                    Of Counsel

Robert E. Dean, Esq. (VSB No. 80288)
ROB DEAN LAW
401 Campbell Ave., Ste. 302
Roanoke, Virginia 24016
Phone:  (540) 585-1776
Fax:        (540) 301-0833
Email:    rob@robdeanlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of April, 2020, the foregoing pleading was filed with the United States District Court for the Western District of Virginia, Roanoke Division using the CM/ECF system. The following parties or their counsel of record were sent a copy:

Kay Heidbreder, Esq. (VSB No. 22288)
M. Hudson McClanahan (VSB No. 46363)
Kristina J. Hartman (VSB No. 922279)
University Legal Counsel (0121)
Burruss Hall, Suite 236
800 Drillfield Drive
Blacksburg, Virginia 24060
Phone: (540) 231-6293
Fax: (540) 231-6474
Email: heidbred@vt.edu
        hud3@vt.edu
        kjhart06@vt.edu